Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)



# UNITED STATES DISTRICT COURT

for the

District of

Division

Case No. _1:22.CV-03 - MSN [IDD]_

_(to be filled in by the Clerk's Office)_

)
)
)
)
)
)
)
)
)
)
)
)
)
)

_Plaintiff(s)_
_(Write the full name of each plaintiff who is filing this complaint._
_If the names of all the plaintiffs cannot fit in the space above,_
_please write "see attached" in the space and attach an additional_
_page with the full list of names.)_

-v-

_Defendant(s)_
_(Write the full name of each defendant who is being sued. If the_
_names of all the defendants cannot fit in the space above, please_
_write "see attached" in the space and attach an additional page_
_with the full list of names. Do not include addresses here.)_

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name                                    KENNETH   POWELL

All other names by which
you have been known:

ID Number                          1893818

Current Institution            WISE  CORRECTIONAL  UNIT  18

Address                             3703  DUNGANNON  RD.

COEBURN            VA          24230
*City*                  *State*          *Zip Code*

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name                                         JOSEPH   D.   BATEMAN

Job or Title *(if known)*          SUPERINTENDENT

Shield Number

Employer                                 DEPARTMENT  OF  CORRECTIONS  (UNIT 28)

Address                                   18155 A. L.  PHILPOTT  HWY.

RIDGEWAY           VA          24148
*City*                  *State*          *Zip Code*

☑ Individual capacity     ☑ Official capacity

Defendant No. 2

Name                                         J.  HIATT

Job or Title *(if known)*          LIEUTENANT

Shield Number

Employer                                 PATRICK HENRY CORRECTIONAL UNIT 28

Address                                   18155 A. L.  PHILPOTT  HWY.

RIDGEWAY           VA          24148
*City*                  *State*          *Zip Code*

☑ Individual capacity     ☑ Official capacity

Defendant No. 3

Name — CARL MANIS

Job or Title *(if known)* — REGIONAL ADMINISTRATOR

Shield Number

Employer — DEPARTMENT OF CORRECTIONS (WRO)

Address — 3313 PLANTATION DR.

ROANOKE *City*    VA *State*    24012 *Zip Code*

☐ Individual capacity   ☑ Official capacity

Defendant No. 4

Name — MISTY BISHOP

Job or Title *(if known)* — REGIONAL OPERATIONS OFFICER

Shield Number

Employer — DEPARTMENT OF CORRECTIONS (WRO)

Address — 3313 PLANTATION DR.

ROANOKE *City*    VA *State*    24012 *Zip Code*

☐ Individual capacity   ☑ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

### 14TH AMENDMENT / DUE PROCESS

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

SEE ATTACHED

## III.  Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☑ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)*

## IV.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

SEE ATTACHED

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

Section 4 (All dates are listed on each exhibit and all incidents took place inside of Patrick Henry Correctional Unit 28)

Defendant #1 Joseph D. Bateman

The defendant and Plaintiff Kenneth Powell had several issues but there are a few specific situations where operating procedure was violated with the grievance procedure, leading to a denial of due process.

The first incident was with regular grievance #PCU28-21-REG-00003 (see exhibit A,B,C & D). This grievance shows a clear violation of OP 866.1 section 2-4(c), which states that the individual involved in the incident can not respond to the complaint but can add information to the investigation.

This violation was also carried out in regular grievance #PCU28-21-REG-00007 and written complaint #PCU28-21-INF-00027 (see exhibit E,F,G,H & I). Both grievances were appealed to level 2 and upheld, even though a clear violation had occurred.

The same violation also occurred with written complaint #PCU28-21-INF-00063 (see exhibit J,K, & L). A grievance was not pursued because I was told by defendant #2 J. Hiatt, that any write ups from that point on, will not leave the facility unless there was a denial of a job.

The violation also occurred with written complaint #PCU28-21-REG-00004 (see exhibit M,N,O,P & Q), which was labeled as a grievance. The complaint was returned with a offender grievance responce level 1, even though the plaintiff never filed a grievance. That is another violation of OP 866.1 because written complaints can not be appealed to level 2.

The defendant also attempted to scare, intimidate and pressure the plaintiff into not filing anymore complaints. This happened in front of defendant #4 Misty Bishop, who was at PCU28 for a meeting, by request of the defendant and was supposed to be a non bias mediator. Ms. Bishop stood by, did not intervene and allowed the defendant to bully the plaintiff and abruptly end a meeting he shouldn't have been a part of, without a resolution. The plaintiff exited the room to safety and wrote up the incident in a written complain (see exhibit S).

The defendant eventually administratively transfered the plaintiff to another facility. The defendant then slandered the plaintiff's name to the staff of his new facility by telling the staff a false claim. The defendant made a statement saying the plaintiff had previously assaulted a corrections officer. This was a clear attempt to pit the new staff against the plaintiff in order to make things difficult for him moving forward.

Defendant #2 J. Hiatt

The defendant is the grievance coordinator at PCU28 and he chose to ignore violations deliberately, even after it was communicated to him verbally by the plaintiff. The defendant also gave responces with false information in a effort to stop the plaintiff from filing or moving forward with grievances (see exhibit P).

The defendant again ignored violations of policy with written
complaint #PCU29-21-INF-0073 and grievance #PCU28-21-REG-00009
(exhibits T,U,V & W). The plaintiff was told by the defendant
previous to filing these complaints, that he would not allow
anymore complaints from him to leave the facility, unless it was
a denial of a job. This was a clear effort to stop the plaintiff
from seeking any further relief for defendant #1 violation's
of policy.
    The defendant also told the plaintiff that he could continue
to write complaints but nothing will be done about them. The
plaintiff took this to mean, even if he sent the complaints out
to level 2, they will ignore them as well, even if there was a
violation. This is evident by the disregard of OP violations at
the level 2 of the grievance procedure.


Defendant #3 Carl Manis


    This defendant played a crucial part in the violation of
rights set forth in this petition. The defendant is the responder
to both grievances sent to his office by the plaintiff. The
defendant is the last line of defence for the plaintiff and he
failed to do his job. The defendant claimed he reviewed the
plaintiff's grievance and the responce from level 1, and found
no violations of OP 866.1 (see exhibits D & I). There are clear
violations of OP 866.1 section 2-4(c), which states the staff
member involved in a complaint can not be the respondent to the
complaint, but may add information to the investigation. The
defendant ignored these violations and denied the plaintiff his
due process.


Defendant #4 Misty Bishop


    This defendant also played a part in the conspiracy to deny
the plaintiff his due process. The defendant was contacted by a
member of the plaintiff's family, because of the violations that
were being ignored through the grievance process. The defendant
scheduled a meeting with the plaintiff, that took place 6/28/21.
In this meeting the defendant started the meeting by mentioning
the outside work detail and transfer issues. Both of these issues
were not told to the defendant by the plaintiff or his family
that contacted her. This meant that she spoke to defendant #1 and
got his opinion on why she was there for the meeting. The
defendant made false claims and never asked the plaintiff what
his issues were. The defendant told the plaintiff, defendant #1
can deny him a transfer even if he had no institutional charges,
was not an institutional need, was eligible and requested the
transfer at his annual review. This is of course false because
there would be no plausible reason for the denial. The defendant
also told the plaintiff he could not get outside work detail
because of a fleeing from police charge on his record. This was a
mistake made by Virginia and the plaintiff attempted to show the
defendant he got the situation cleared up through the Virginia
State Trooper Criminal Record Division. She then made another
false claim by saying the plaintiff had more than the one charge

from Virginia. When the plaintiff inquired about what state the
other fleeing charge came from, the defendant claimed she could
not remember. The plaintiff then knew no matter what he said, the
defendant would make up an excuse for anything he said.

The defendant then suggested the plaintiff speak to defendant
#1, with her in the room. The plaintiff knew this was not a good
idea, but he was desperate for some type of fair treatment, so
he reluctantly agreed. The attempt failed because defendant #1
entered the room and immediately became hostile, raised his voice
and took a very aggressive stance towards the plaintiff. The
plaintiff was scared defendant #1 might assault him, and the
defendant stood by in silence and did nothing to intervene. So
defendant #1 abruptly ended the meeting and forced the plaintiff
to leave the room. The plaintiff knew no good outcome would come
from trying to ask the defendat to finish their meeting, so he
exited the room to safety and wrote a complaint on the incident.
(see exhibit S)

The defendant then put a plan in motion to cover herself if
the plaintiff made a complaint. She told staff at D.O.C. main
office that the plaintiff was so upset, he did not want to listen
to her, a blatant lie. The defendant did not meet the plaintiff
to help him, she met with the plaintiff to try and silence him.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.      What date and approximate time did the events giving rise to your claim(s) occur?

D.      What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?
        Was anyone else involved?  Who else saw what happened?)*

## V.      Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical
treatment, if any, you required and did or did not receive.

SEE ATTACHED

## VI.     Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes.
If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for
the acts alleged.  Explain the basis for these claims.

SEE ATTACHED

Section 5

    The plaintiff has sustained mental and emotional damage due to this injustice. To be in the already stressful situation of incarceration, add on violations of D.O.C. policy, being bullied and lied to, creates a recipe for depression. This is a mental battle and has caused the plaintiff a great deal of stress to his emotional and mental health.

    The plaintiff sought help through the medical and mental health staff at PCU28. The medical staff could only provide internet articles on how to deal with stress. The mental health staff told the plaintiff "It's prison, deal with it". So the plaintiff did not receive the care he needed and as a result it caused weight and hair loss.

    Mental health is a serious issue in America, that has been swept under the rug for far to long. The plaintiff reached out for help and had to deal with a system that doesn't treat mental health as a serious issue that can have devastating consequences. In a prison environment, untreated mental issues, can result in staff assaults, inmate assaults, property damage or self harm.

Section 6

    The plaintiff would like policy on the discretionary power of D.O.C. staff members, to be implemented so that it's fair and applies equally to all inmates and staff.

    Openness and lack of secrecy are the moral enemies of arbitrariness. Openness should be the standard rule for prison administrators to follow. Deviationsfrom the concept of openness should be tolerated only when there are compelling and overwhelming reasons. Prison officials must be prevented from hiding behind security and safety rationales.

    Inmates should get the right to have neutral and detached fact finders and a written statement by the decision maker as to the evidence relied on and the reason for the discretionary action or decision.

    Rules and regulations can't be devised that generalize and individualize in all factual settings. Rules and regulations are essential, but discretion is also essential. The proper objective is to find the proper balance between the standard, which is applicable to the majority of cases when the standard is brought into question, and the subjective deviation from that standard when the facts, circumstances and equities dictate otherwise. The key issue then is the identification, channeling and structuring of the exercise of discretion needed in applying a subjective standard. All discretion need not be eliminated, only unnecessary discretion.

    A prison official exercises discretion whenever the effective limits on his power leave him free to choose among several courses of action, including the choice of taking no action. He determines facts, applies the policy, and acts according to his personal dictates after the facts and policy are known. The act

may cause an injustice. This injustice results from the failure
to obtain the true facts, erroneous application of policy, or
lack of knowledge, or a act in which personal bias, prejudice,
and disreguard of policy play the predominant motive. The result
is this petition for judicial intervention.

It is important to minimize discretionary injustice in the
prison setting. Unnecessary discretionary power must be limited.
Necessary discretionary power must be confined, structured and
checked.

We confine discretionary power by keeping it within a set of
designated boundaries. This may be accomplished through statutory
enactments, administrative rules and regulations, and judicial
decisions. In other words standards are created. Workable in a
prison environment may be accomplished by policy statements,
adjudicatory opinions, or by the exercise of rule making power.

A principal error commited by prison administrators has been
their failure to make and implement broad based administrative
standards. Deference to the legislature or to the courts, creates
an administrative no-mans-land in prison administration. In place
of identifying, facing, and resolving problems through the
creation and implementation of policy. The result has too often
been indecision, vagueness and abrogation of responsibility. As
nature abhors a vacuum, this failure of prison administrators to
offer direction, results in the least trained staff person,
exercising the broadest of discretion, often with disastrous
results.

We structure discretion in a prison environment by
regularizing it, organizing it, and producing order in it, so
that decisions will avoid unjust results. There is no valid
reason why fair informal procedures should not be made applicable
to every stage of the decision making process, when prisoners
suffer a change in status because if it.

Checking discretion is also an essential ingredient in
controling the abuse of administrative discretion in a prison
evironment. The goal is fundamental fairness in a system of
justice, that takes into account the human frailties in
correctional administration. However, we must be guided by the
old adage that unrestricted discretion, like curruption, marks
the beginning of the end of liberty!

All parties involved played a part in the conspiracy to
maintain a dictatorship over the inmates under their control.
this environment caused the plaintiff to lose the opportunity to
get into the work release program. This program helps inmates
returning to society, establish work experience, save money and
have stability after incarceration. The plaintiff was denied this
by the defendants in this petition, for no reason other than to
maintain their unchecked positions of authority through selective
bias.

Therefore the plaintiff would also like financial damages
for wadge losses for 12 months of a work release job. The jobs
in the area where the plaintiff would have worked, average $12 a
hour and 40 hours a week. The plaintiff would also like $5,000
for mental and emotional damage. Bringing the total in damages
requested to $29,960.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**VII.  Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

PATRICK HENRY CORRECTIONAL UNIT 28

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

ALL

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.   If you did file a grievance:

1.   Where did you file the grievance?

PATRICK HENRY CORRECTIONAL UNIT 28

2.   What did you claim in your grievance?

SEE ATTACHED

3.   What was the result, if any?

SEE ATTACHED

4.   What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

SEE ATTACHED

Section 7-E


7-E(2)

     The plaintiff claimed in grievance PCU28-21-REG-00003, that
he was given contradicting responces by defendant #1 Mr. Bateman.
Mr. Bateman was asked verbally and in a request, the reason for
the ICA denial of the plaintiff's request for a work center
transfer (see exhibit X). Mr. Bateman responded 3 days later with
his answer and was clear on the reason.
     The plaintiff then researched transfer operating procedure
and found out the answer Mr. Bateman told him was incorrect. The
OP 830.5 says that an inmate who is moved administratively to
another facility, doesn't have to stay the required 12 months and
can request a transfer at their annual review. The plaintiff was
thinking Mr. Bateman did not know he was administratively moved.
So the plaintiff then wrote another request explaining that there
was a mistake made and tried to correct it, in case Mr. Bateman
didn't know. Mr. Bateman responded with a contradicting answer to
the first request (see exhibit Y). If Mr. Bateman didn't know,
this would be an easy situation to fix or offer a reasonable
solution, neither action took place.
     The plaintiff clearly asked Mr. Bateman, what made him not
suitable for a work center, in the first request. In the second
request Mr. Bateman's answer returned to the origional ICA ruling
and totally disreguarded the answer he gave in the first request.
Mr. Bateman gave a reason why the plaintiff was not suitable and
when asked to correct his mistake, used the unsuitable excuse to
avoid admitting that mistake, at the plaintiff's expense. He also
stated in the first request, that the plaintiff could request an
administrative review in 6 months. He then took that option off
the table in the second request. This is what lead to the filing
of the first grievance.
     The plaintiff also filed grievance PCU28-21-REG-00007,
claiming Mr. Bateman again changed his position on what he told
the plaintiff, for no reasonable reason. At the 6 month date from
the first request, the plaintiff went to the couselor to request
the administrative review Mr. Bateman said he could. Counselor
Galloway of PCU28 reviewed the request and processed the
paperwork. The plaintiff again requested a transfer during this
process. Mr. Bateman rejected the transfer request using the
unsuitable reason again. Mr. Bateman also claimed he didn't
approve the review (see exhibit Z). He then walked that statement
back in exhibit E, where he admits he did tell the plaintiff
he could request one, but he doesn't have to grant it. That act
shows Mr. Bateman's bias attitude towards the plaintiff.
     So the grievance was filed to get an explanation on all the
excuses and denials the plaitiff was given, and to push for
change in the decision making process, in order to make it fair.


7-E(3)

     Grievance 00003 and 00007 were responded to by Mr. bateman,

the same individual involved in the grievance, which is against
D.O.C. policy, and the outcome was a bias decision based on
personal feelings and emotions.


7-E(4)

     Grievance 0003 was appealed to level 2 and even though D.O.C.
policy was violated by Mr. Bateman, defendant #3 Mr. Manis upheld
the appeal of the grievance, finding no violations.
     Grievance 0007 was also appealed, with the same violation,
to level 2. Before the appeal was submitted, a mental health
staff member advised the plaintiff that if he wanted to appeal
the denial of his transfer and get it to CCS, just write that on
the appeal to level 2. The plaintiff did so and again Mr. Manis
ignored the violation of D.O.C. policy, upheld the grievance and
found no violation of policy. The transfer appeal wasn't sent to
CCS and was never addressed by level 2.
     Both grievances have been completed through the grievance
process.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

SEE ATTACHED

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

Section 7-G

     The plaintiff also tried to get defendant #1 Mr. Bateman, to
be clear on what was being used in his decision to deny the
plaintiff outside work detail (see exhibit A-2). Mr. Bateman used
"Criminal History" as the reason for his decision and wouldn't
explain what in the plaintiff's history was used. When requested
to put a clear reason in writing, Mr. Bateman chose to ignore
that request and hid behind a "At My Discretion" rationale. The
plaintiff should have the right to know what's being used against
him in a decision that affects his future, especially if that
same info is going to be used to determine future decisions. If
that info was wrong and could be corrected, the plaintiff should
be afforded the opportunity to know what needs to be corrected.
Mr. Bateman claimed he used info from the plaintiff's criminal
history but withheld the specific info being used to deny him on
multiple things. This shows Mr. Bateman's clear attempt to abuse
his discretionary decision making power.
     The plaintiff also wrote a letter to defendant #3 Mr. Manis
in order to get some type of relief from Mr. Bateman's abuse. A
lot of the exhibits filed in this court filing were sent along
with this letter (see exhibit B-2). This package has yet to be
responded to.
     The plaintiff has been transferred from the facility where the
incidents took place, after several complaints and family members
calling D.O.C's main office, Offender Management Services and the
Grievance Western Region Office. Family members also attempted to
contact David Robinson on the advice of a counselor. There was a
responce from OMS on what the plaintiff's transfer status was
and a responce from defendant #4 Ms. Bishop, who agreed to visit
the plaintiff but that visit turned out to be a disaster (see
exhibit S).
     The plaintiff is doing very well at his new facility, working
the same type of outside detail that was denied by Mr. Bateman.
Mr. Bateman attempted to sabotage the plaintiff's ability to do
this type of work by sending the new staff members a message that
was false and a deformation of the plaintiff's character. So even
after Mr. Bateman no longer had to deal with the plaintiff, he
still attempted to exercise an abuse of power, for no reason
other than his hate, personal feelings and emotional bias towards
the plaintiff.
     If the court was to look into the paperwork that involved
discretionary decision making, such as outside detail and inmate
transfers, it would find a pattern of abuse and bias. For example
the plaintiff was denied outside work detail even though he had
no escapes, violent crime history or institutional charges. But
another inmate who is incarcerated on a armed robbery charge, got
into a fist fight in front of the plaintiff, did segregation time
for it and was still given outside work detail. The plaintiff
also requested a transfer 2 times and was denied by Mr. Bateman.
The reason given was the plaintiff was unsuitable for work center
assignment, even though he fit all the criteria. A reason for the
unsuitable excuse was given by Mr. Bateman but later changed when
challenged by the plaintiff. So the plaintiff's father called OMS
to find out the reason listed in their system. OMS told his
father the system states "inmate enrolled in electrical class do

not transfer". This reason was never given to the plaintiff by
Mr. Bateman, for the denials of transfers, but it's what he filed
in the computer system. Another inmate was enrolled in the same
class as the plaintiff and was set to graduate at the same time.
This inmate was also denied outside detail due to his criminal
history but was given a 6 month administrative review and allowed
to transfer to a work center. How can Mr. Bateman justify this
decision without showing a clear bias towards the plaintiff.
These are just 2 examples from the plaintiff but there are many
more envolving different inmates, who feel there is nothing they
can do, because the people in power work together against the
inmates, even if they are wrong.

Mr. Bateman also denied the plaintiff an interstate compact
request due to the fact it was submitted late. The compact was
submitted on time but a covid-19 outbreak occurred that shut the
facility down. When the outbreak was over the plaintiff's
counselor finally got the paperwork to Mr. Bateman 2 months after
the 2 year deadline. Even though Mr. Bateman had discretionary
power to overlook the delay due to the covid-19 outbreak, he
chose to disreguard it and use his power to punish the plaintiff.

If Mr. Bateman is allowed to continue his abusive practices
when it comes to discretionary decisions, it will lead to a
system of corruption. This corruption will trickle down to the
employees and create a hostle environment where staff or inmates
may be assaulted. The plaintiff strongly suggest intervention
before this happens!

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

   1.   Parties to the previous lawsuit
        Plaintiff(s)
        Defendant(s)

   2.   Court *(if federal court, name the district; if state court, name the county and State)*

   3.   Docket or index number

   4.   Name of Judge assigned to your case

   5.   Approximate date of filing lawsuit

   6.   Is the case still pending?
        ☐ Yes
        ☐ No

        If no, give the approximate date of disposition.

   7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

☐ Yes

☑ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

   1.   Parties to the previous lawsuit
        Plaintiff(s)
        Defendant(s)

   2.   Court *(if federal court, name the district; if state court, name the county and State)*

   3.   Docket or index number

   4.   Name of Judge assigned to your case

   5.   Approximate date of filing lawsuit

   6.   Is the case still pending?

        ☐ Yes

        ☐ No

        If no, give the approximate date of disposition

   7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          1/4/22

Signature of Plaintiff
Printed Name of Plaintiff          KENNETH  POWELL
Prison Identification #          1893818
Prison Address          3703 DUNGANNON RD.
                                 COEBURN                VA        24230
                                          *City*              *State*        *Zip Code*

### B.    For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Address
                                          *City*              *State*        *Zip Code*
Telephone Number
E-mail Address

