IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KENNETH POWELL,<br>        Plaintiff, | ) | Civil Action No. 7:22-cv-00041 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| JOSEPH D. BATEMAN, *et al.*,<br>        Defendants. | ) | United States District Judge |
| | ) | |

**MEMORANDUM OPINION**

Kenneth Powell, a Virginia inmate proceeding *pro se*, filed a complaint pursuant to 42

U.S.C. § 1983.  His complaint names four defendants and asserts a separate claim against each,

all of which occurred at Patrick Henry Correctional Unit 28 (PCU28) where Powell was

incarcerated at all relevant times.  The complaint is before the court for review pursuant to  28

U.S.C. § 1915A(a).  For the reasons discussed herein, the court concludes that the complaint fails

to state a claim for which relief can be granted and must be dismissed.

I.    BACKGROUND

The only constitutional right Powell alleges was violated was his right to due process

under the Fourteenth Amendment.  But Powell sets out his claims separately as to each

defendant, and the court discusses them in that manner, as well.  His chief complaint, however, is

that he repeatedly asked to participate in a work-release program, first in late 2020 and then

multiple times in 2021, and his requests were denied by defendant Joseph D. Bateman, the

Superintendent of PCU.  Powell then grieved that issue and others, and he claims that his rights

were violated again during the course of the grievance procedure.

With regard to his claim against Bateman, Powell first complains about the denial of his

request to participate in work-release.  Powell acknowledges that the decision as to whether to

allow him to participate in a work-release program was within defendant Bateman's discretion,

but he contends that Bateman abused that discretion.  He alleges that Bateman did not have valid reasons for the denial and that he was inconsistent in his decision-making.  He also claims that Bateman gave different reasons for rejecting Powell at different times and that the changed reasons given are further proof that there was "no reasonable reason" to reject him.  (Compl. 13; *see also id.* at 16.)  In addition to Bateman's denying Powell the opportunity to participate in a work release program, he also twice denied Powell's request to transfer to a different facility. (Compl. 16.)

Powell also repeatedly contends that defendants violated his due process rights by not following the grievance procedure.  For example, he claims that Bateman responded to some grievances complaining about his actions, but the grievance policy states that the individual involved in the incident cannot respond to the grievance.  (Compl. 5.)

Powell's allegations against Bateman also include the description of a meeting that occurred between Powell and defendant Misty Bishop in June 2021.  At the end of that meeting, Bateman also joined them, with Powell's consent.  Once Bateman arrived, however, Powell alleges that Bateman "attempted to scare, intimidate, and pressure the plaintiff into not filing any more complaints."  (*Id.*)  Bishop, who Powell says was supposed to be a non-biased mediator, did nothing to stop the bullying.  Lastly, Powell contends that after Bateman transferred Powell to another facility, he "slandered the plaintiff's name" to the new facility's staff by telling them that Powell previously had assaulted a corrections officer, which was untrue.  (*Id.*)

The second defendant is J. Hiatt, the grievance coordinator at PCU 28.  According to Powell, Hiatt ignored violations of the grievance procedure.  He also gave responses with "false" information in an effort to stop plaintiff from filing or moving forward with grievances.  (Compl. 5.)  For support of this, Powell points to Exhibit P to the complaint, but that document is merely a grievance that Hiatt denied as repetitive, because Powell had previously filed a grievance about

2

the same issue, *i.e.*, the denial of his work-release requests.  (Ex. P, Dkt. No. 1-16.)  According to Powell, Hiatt also told Powell that he would not allow any more complaints from him asking to leave the facility and that nothing would be done about future complaints written by Powell on that topic.

The third defendant is Carl Manis, the warden at Red Onion State Prison.  According to Powell, Manis "played a crucial part in the violation" of Powell's due process rights because he ruled against Powell as to several grievances and ignored the violations of the grievance policy. (Compl. 6.)

Powell alleges that the fourth defendant—Misty Bishop—was part of the "conspiracy" to deny Powell's rights.  (*Id.*)  In particular, she was contacted by a member of Powell's family and agreed to meet with him.  He claims that Bishop arranged the meeting discussed above at which Powell, Bateman, and she were present.  But instead of being a neutral arbiter or presenting the concerns raised by Powell's family, she talked to Bateman before the meeting and brought up the issues that Bateman thought were important.  She never asked the plaintiff what his issues were. During the meeting, Bishop also falsely told Powell that Bateman could deny him work release or a transfer even if he had no institutional charges and was eligible.  Powell claims this is "false" because "there would be no plausible reason for the denial."  (*Id.*)  Bishop also falsely stated that Powell had more than one charge on his institutional record.  Powell alleges that Bishop "did not meet with [him] to help him, she met with [him] to try and silence him."  (*Id.* at 7.)

Powell alleges that defendants' conduct caused him mental and emotional damage and that the resulting stress caused weight and hair loss.  (*Id.* at 9.)  In the section of his complaint where he is asked to identify what relief he seeks, Powell devotes two pages to what is best described as an essay on the importance of neutral decisionmakers to make "discretionary"

3

decisions and the nature of "discretion." (Compl. 9–10.) Powell emphasizes the importance of "minimiz[ing] discretionary injustice in the prison setting" and argues that "[n]ecessary discretionary power must be confined, structured[,] and checked." (*Id.* at 10.) He claims that the defendants acted together to "maintain a dictatorship over the inmates under their control" and caused plaintiff to lose the opportunity to get into the work release program. (*Id.*) He seeks financial damages in the form of one year's worth of wages he would have earned in a work release job, as well as $5,000 for mental and emotional suffering. (*Id.*) Powell has since been transferred to a different facility, and he reports that he "is doing very well . . . working the same type of outside detail that was denied by Mr. Bateman." (*Id.* at 16.)

## II.   DISCUSSION

### A.  28 U.S.C. § 1915A(a)

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring court, in a case where a plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted). Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### B.  Powell's Claims

#### 1.  Denial of a work-release job

None of Powell's claims state a constitutional claim against any of the defendants. The

denial of a work-release job (or any prison job) does not state a constitutional claim. *O'Bar v. Pinion*, 953 F.2d 74, 82–84 (4th Cir. 1991) (explaining that a prisoner has no due process rights as to the loss of his job because there is no protected liberty or property interest in prison employment). *Robles v. Sturdinvant*, No. 7:14-cv-00070, 2014 WL 4853409, at * 1 (W.D. Va. Mar. 27, 2014) ("[I]nmates have no independent constitutional right to a prison job and as such, prison officials may generally terminate an inmate from a particular prison job for any reason without offending federal due process principles."); *Patel v. Moron*, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012) ("[I]nmates do not have a constitutional right to a prison job, and in turn, the deprivation of a prison job states no independent constitutional claim.").

### 2. Denial of transfer requests

Any claim against Bateman based on his denying Powell's requests for transfer fails for like reasons. Prisoners have no constitutional right "to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution." *Pevia v. Hogan*, 443 F. Supp. 3d 612, (D. Md. 2020) (collecting authority). Accordingly, being denied a transfer did not violate Powell's rights. *See id.*

### 3. Due process claim based on failures to follow the grievance policy

As to Powell's many claims that the grievance policy was not properly followed or that certain requirements of that policy were ignored, such violations do not state a federal constitutional claim, primarily because "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("Booker II"). *See also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Relying on *Adams*, district courts, including this one, have held that a prison official's failure to comply with a grievance procedure is not

actionable under § 1983. *E.g.*, *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."); *Brown v. Va. Dep't of Corr.*, No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."). Thus, any claim against any of the defendants based solely on their participation in the grievance process or their failure to properly comply with the grievance procedure does not state a viable constitutional claim and must be dismissed.

### 4. Verbal harassment and "bullying"

As to the conduct of Bateman and Bishop in the June 2021 meeting, "bullying" in the form of verbal harassment does not rise to the level of a constitutional violation. An Eighth Amendment claim requires—at a minimum—either a "nontrivial" use of force, *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), or a showing of prison conditions that demonstrate a "significant physical or emotional harm, or a grave risk of such harm," *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). There is no allegation of force here, trivial or otherwise, nor does a single incident of verbal harassment constitute an unconstitutional prison condition. The court certainly does not condone verbal harassment, which is clearly unprofessional and improper, but such conduct does not violate the Eighth Amendment. *Henslee v. Lewis*, 153 F. App'x 179, 179 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."). *See also Morva v. Johnson*, No. 7:09-cv-00515, 2011 WL 3420650, at *7 (W.D. Va. Aug. 4, 2011) (collecting authority for the proposition that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety," do not give rise to a due process violation or an Eighth Amendment

violation).  Thus, Powell fails to state a constitutional violation based on Bateman's bullying, Bishop's failure to intervene in the same, or Bateman's alleged "slander" of Powell to other prison officials.  Any § 1983 claim premised on those facts must be dismissed.

### 5.  Other potential claims

Some references in Powell's complaint could be characterized as ones that might typically support other types of claims, and there of two of them that the court will address briefly.  But Powell has been thorough in laying out his claims against specific defendants, and the court will not construe his complaint as containing additional claims that it does not appear he meant to bring.  District courts are not required "to explore exhaustively all potential claims of a *pro se* plaintiff," nor should they "construct full blown claims from sentence fragments." *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Even if the court deemed his complaint to include these two additional claims, Powell has not adequately pled either of them.  First, in the portion of the complaint where he discusses what damages he suffered, he claims that he sought help to manage his stress through the medical and mental health staff.  He alleges that they helped him, but only by providing internet articles on how to deal with stress.  (Compl. 9.)  In some cases, this might constitute a separate claim based on a failure to provide sufficient mental health treatment.  But Powell does not list a separate claim against any medical or mental health staff.  Nor does he name any such persons as defendants or even identify anyone who was personally involved in denying him treatment.  He thus fails to state a valid claim under 42 U.S.C. § 1983.  *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).  Any Eighth Amendment claim

also requires a plaintiff to allege that a defendant was deliberately indifferent to a serious

medical need, which can include mental health needs.  *See DePaola v. Clarke*, 884 F.3d 481, 486

(4th Cir. 2018).  Given his scant allegations, though, it is questionable whether plaintiff has

plausibly alleged either a "serious medical need" or conduct constituting deliberate indifference.[1]

Second, Powell alleges that he was denied an outside work detail even though he had no

escapes, violent criminal history, or institutional charges, but another prisoner was approved for

a work detail, even though he was incarcerated on an armed robbery charges and had spent time

in segregation for being in a fist fight while in prison.  (Compl. 16.)  Similarly, he contends that

at one point, Powell's father was told that Powell had been rejected for work detail because he

was enrolled in an electrical class, but another inmate also enrolled in the same class was

allowed to participate.  (*Id.* at 16–17.)  He alleges that these facts show Bateman's "clear bias"

toward Powell, (*id.* at 17), and in one of his grievances, he asks Bateman whether he "can pick

who you like and discriminate on those you don't?"  (Compl. Ex. M, Dkt. No. 1-13.)

Despite these allegations, Powell's complaint does not reference an equal protection

claim, and the court declines to "construct" one from his "sentence fragments."  *See Beaudett*,

775 F.2d at 1278.  Moreover, his current allegations fail to state a claim for violation of the

Equal Protection Clause of the Fourteenth Amendment.  That Clause which provides that a state

may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const.

amend. XIV, § 1.  To state a violation, a litigant must first allege "that he has been treated

differently from others with whom he is similarly situated and that the unequal treatment was the

result of intentional or purposeful discrimination."  *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th

Cir. 2020) (internal citations omitted).  He also must plausibly allege that the disparity was not

---

[1]  If Powell wants to assert such a claim and believes he can correct the noted deficiencies, he may file a
separate complaint raising that claim, subject to the applicable statute of limitations.

justified under the appropriate level of scrutiny, which in the prison context, means that "the disparate treatment [was not] reasonably related to any legitimate penological interests." *Id.* (quoting *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002).  Powell notes some distinctions between him and other prisoners who were approved, but he does not indicate that they were otherwise similarly situated.  Indeed, one of the reasons Powell was given for not being approved was that he had not been present at the institution for a year, which was a requirement for approval.  But he does not allege whether any of those other individuals satisfied that requirement.  Nor does he provide any basis to think that any different treatment was the result of "intentional or purposeful" discrimination by Bateman.  Accordingly, even if the court construed his complaint as asserting an equal protection claim, he has not adequately pled one.

### III.  CONCLUSION

For the reasons set forth in this opinion, Powell's complaint will be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).

An appropriate order will be entered.

Entered: April 18, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

9